# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOVEREIGN BANK, N.A.<br>1010 Farmington Avenue<br>West Hartford, CT 06017 : <br><br>   Plaintiff,<br>    v.<br><br>AMERICAN SENIOR LIVING COMMUNITIES<br>PA I, LLC<br>620 Main Street, 3B<br>East Greenwich, RI 02818,<br><br>ATHENS HEALTHCARE, INC. d/b/a ASHTON<br>HEALTHCARE<br>620 Main Street, 3B<br>East Greenwich, RI 02818,<br><br>ATHENS PROPERTIES, LLC<br>620 Main Street, 3B<br>East Greenwich, RI 02818,<br><br>ASLC MANAGEMENT OF PA, LLC<br>620 Main Street, 3B<br>East Greenwich, RI 02818,<br><br>   Defendants. | NO. _____<br><br>CIVIL ACTION - LAW |

## COMPLAINT

Plaintiff, Sovereign Bank, N.A. ("Sovereign Bank" or "Plaintiff"), by and through its attorneys, Duane Morris LLP, hereby files this Complaint against American Senior Living Communities PA I, LLC ("ASLC"), Athens Healthcare, Inc. d/b/a Ashton Healthcare ("Ashton Healthcare"), Athens Properties, LLC ("Athens Properties"), ASLC Management of PA, LLC ("ASLC Management" and collectively with ASLC, Ashton Healthcare and Athens Properties the "Defendants" or the "Borrowers"), and in support thereof states as follows:

## PARTIES

1. Sovereign Bank is a national banking association with a principal place of business in Delaware and an address at 824 North Market Street, Suite 100, Wilmington, Delaware 19801.

2. ASLC is a Pennsylvania limited liability company with an address at 620 Main Street, 3B, East Greenwich, RI 02818.

3. Ashton Healthcare is a Pennsylvania corporation with an address at 620 Main Street, 3B, East Greenwich, RI 02818.

4. Athens Properties is a Pennsylvania limited liability company with an address at 620 Main Street, 3B, East Greenwich, RI 02818.

5. ASLC Management is a Pennsylvania limited liability company with an address at 620 Main Street, 3B, East Greenwich, RI 02818.

## NATURE OF ACTION, JURISDICTION AND VENUE

6. This is a breach of contract action to collect on a commercial loan and mortgage made by Sovereign Bank to the Borrowers, and to seek the appointment of a receiver for the Facility (as defined below) pursuant to Rule 66 of the Federal Rules of Civil Procedure and Rule 1533 of the Pennsylvania Rules of Civil Procedure.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity between Sovereign Bank and all of the Defendants.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants are residents of this District and this is the District in which a substantial part of the events or omissions giving rise to the claim occurred.

**FACTS COMMON TO ALL COUNTS**

I. **The Loan**

9. On or about December 17, 2007, Sovereign Bank made a loan to the Borrowers in the original principal amount of Eight Million Eight Hundred Thousand Dollars ($8,800,000.00) (the "2007 Loan") pursuant to the terms and conditions of that certain Promissory Note dated December 17, 2007 (the "2007 Note") and that certain Master Loan Agreement dated December 17, 2007 (the "Master Loan Agreement"). True and correct copies of the 2007 Note and the Master Loan Agreement are attached hereto as **Exhibit A** and **Exhibit B** and are incorporated herein by reference.

10. On or about February 29, 2008, Sovereign Bank made an additional loan to the Borrowers, among others, in the original principal amount of Three Million Two Hundred Fifty Five Thousand Five Hundred Dollars ($3,255,500.00) (the "2008 Loan" and, together with the 2007 Loan, the "Loans") pursuant to the terms and conditions of that certain Promissory Note dated February 29, 2008 (the "2008 Note" and, together with the 2007 Note, the "Notes"). A true and correct copy of the 2008 Note is attached hereto as **Exhibit C** and is incorporated herein by reference.

11. To secure the payment and performance in full of the amounts due and owing by the Borrowers to Sovereign Bank under the Notes, Athens Properties executed an Open-End Mortgage, Security Agreement and Fixture Filing (the "Mortgage") dated December 17, 2007 and the Borrowers executed that certain Security Agreement (All Assets) dated December 17, 2007 (the "Security Agreement"). True and correct copies of the Mortgage and the Security Agreement are attached hereto as **Exhibit D** and **Exhibit E** and are incorporated herein by reference. The instruments and agreements attached hereto as **Exhibits A** through **E**, and all

other documents, agreements and instruments executed at any time in connection with the Loans, are collectively referred to herein as the "<u>Loan Documents</u>".

12.	The Mortgage was duly recorded with the Recorder of Deeds for Bradford County as Instrument Number 200715102.

13.	The Mortgage encumbers the real property located at 200 South Main Street, Borough of Athens, County of Bradford, Commonwealth of Pennsylvania which has historically operated as a dually certified skilled nursing facility (the "<u>Facility</u>"), and the Security Agreement encumbers the Borrowers' remaining assets, including, but not limited to the Facility's receivables, equipment, contracts, inventory, intellectual property and intangibles, as more fully set forth in the Security Agreement.

14.	Pursuant to the Mortgage and the Security Agreement, the Borrowers granted Sovereign Bank a first priority lien on certain real, personal and intangible property, as more fully described in the Loan Documents.

15.	The Borrowers, or certain of them, also entered into certain amendment and waiver agreements, as follows: (1) on February 29, 2008 the Borrowers and Sovereign Bank entered into an Amendment and Joinder Agreement; (2) on July 30, 2010 the Borrowers and Sovereign Bank entered into a Waiver and Modification Agreement; (3) on February 22, 2013 the Borrowers and Sovereign Bank entered into a Waiver and Modification Agreement; and (4) on February 22, 2013 Athens Property, Ashton Healthcare and Sovereign Bank entered into an Amendment to Mortgage Documents (Ashton) (collectively the "<u>Amendments and Modifications</u>").  The provisions of the Amendments and Modifications have had no effect on the provisions of the Loan Documents quoted below, and similarly are irrelevant to Plaintiff's request for the appointment of a receiver.

## II. Relevant Provisions of the Loan Documents

16. Pursuant to the Master Loan Agreement, the Borrowers covenanted that they would maintain the eligibility of the Facility to participate in the Medicare and Medicaid programs, as follows:

> the Borrowers will maintain in effect at all times eligibility of the Ashton Facility to participate in the Medicaid program (including maintenance of an appropriate Provider Agreement), eligibility to participate in the Medicare program (including maintenance of appropriate Provider Agreement [*sic*]), professional licenses and accreditations from all appropriate agencies and boards for the Ashton Facility's administrative, medical and nursing staffs, and all other required licenses, certifications, accreditations, approvals and authorizations from PADOH or any other supervisory or regulatory body having or claiming jurisdiction.

Master Loan Agreement, § 6.01(e)(iii).

17. The Master Loan Agreement further provides that if the Borrowers fail in the performance of the above requirements, such failure constitutes an event of default under the Loan Documents:

> The occurrence of any of the following events shall constitute an Event of Default under this Agreement:
>
> ….
>
> Any Borrower shall default in the performance or observance of any agreement or obligation under any of Subsections 6.01(b) (first sentence only), 6.01(c), 6.01(d), **6.01(e),** 6.01(m), 6.01(n) or 6.01(o) or any provision of Section 6.02 or Section 6.03…

*Id.* at § 7.01(c) (emphasis added).

18. Upon an Event of Default (as defined in the Master Loan Agreement), Sovereign Bank may accelerate the entire principal amount of the loan without notice, as provided below:

> Upon the occurrence of any Event of Default and at any time thereafter, in addition to any other rights and remedies available to the Bank hereunder or otherwise, the Bank may exercise any one or more of the following rights and remedies (all of which shall be cumulative):

> (a) Declare the entire unpaid principal amount of each Term Note and each Term Loan then outstanding, all interest accrued and unpaid with respect to any and all of the foregoing, and all other amounts payable under or with respect to this Agreement to be forthwith due and payable, whereupon the same shall become forthwith due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by the Borrowers.

*Id.* at § 7.02(a).

19. Additionally, upon an Event of Default (as defined in the Master Loan Agreement), Sovereign Bank may exercise any rights that it may have under any of the other Loan Documents, including the Mortgage and the Notes:

> Upon the occurrence of any Event of Default and at any time thereafter, in addition to any other rights and remedies available to the Bank hereunder or otherwise, the Bank may exercise any one or more of the following rights and remedies (all of which shall be cumulative):
>
> (c) Exercise all rights and remedies under this Agreement, under each Term Note, under each Mortgage, under each Security Agreement and under any other agreement with the Bank, and exercise all other rights and remedies which the Bank may have under applicable law.

*Id.* at § 7.02(c).

20. The Mortgage contains a confession of judgment provision, providing that upon an event of default, which includes an Event of Default under the Master Loan Agreement, Sovereign Bank may confess judgment against Athens Properties for the purposes of obtaining possession of all or part of the Facility.  Mortgage at ¶¶ 17(f) and 19.

21. In addition to the confession of judgment provision, the Mortgage provides that upon the occurrence of an event of default, which includes an Event of Default under the Master Loan Agreement, Sovereign Bank may:

> [H]ave a receiver appointed to enter and take possession of all or any portion of the Mortgaged Premises, collect the rents, issues and profits therefrom, and apply the same as the court may direct, and the Mortgagee shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Mortgaged Premises as security for the amounts due hereunder, or the

6

availability of other collateral, or the solvency of any person or other entity liable for the payment of such amounts.

*Id.* at ¶ 18(g).

### III. The Termination of Borrowers' Provider Agreement

22. In order to qualify to receive payments under the Medicare and/or Medicaid programs, every participating facility must be certified as meeting the participation requirements established by federal law. See 42 U.S.C. §§ 1395i-3, 1396r; 42 C.F.R. §§ 483.1 *et seq.*

23. The Secretary of the United States Department of Health and Human Services is responsible for conducting periodic onsite inspections, termed "surveys," of facilities to determine whether they meet federal certification requirements and thus are eligible to participate in the Medicare and Medicaid programs. 42 U.S.C. §§ 1395i-3(g), 1396r(g).

24. Nursing homes that participate in the Medicare program are termed skilled nursing facilities ("SNF") and nursing homes that participate in the Medicaid program are termed nursing facilities ("NF").

25. Facilities that participate in both the Medicare and Medicaid programs, such as the Facility, are described as "dually certified."

26. The Secretary's determination of noncompliance for dually certified facilities controls for both the Medicare and Medicaid programs. 42 U.S.C. §1396r(i); 42 C.F.R. § 488.330(a)(1)(i)(D), (e)(3)(ii).

27. The Social Security Act authorizes the Secretary to regulate the Medicare program and to impose against a facility that is not in "substantial compliance" with participating requirements, various remedies depending on the circumstances. The Secretary has delegated to United States Department of Health and Human Services' Centers for Medicare & Medicaid

7
DM1\3911934.5

Services ("CMS") the authority to impose the remedies. 42 U.S.C. §§ 1396r, 1395i-3, 42 C.F.R. part 483.

28. CMS regulations provide that state agencies may conduct inspection surveys to ascertain compliance with the federal participation requirements. 42 C.F.R. § 488.10 to 488.28.

29. The Pennsylvania Department of Health ("DoH") is the state agency in Pennsylvania specifically responsible for surveying health facilities that participate in the Medicare and Medicaid programs, including nursing homes.

30. DoH "conducts on-site monitoring ... as necessary ... when - (1) a facility is not in substantial compliance with the requirements and is in the process of correcting deficiencies; (2) a facility has corrected deficiencies and verification of continued substantial compliance is needed; or (3) the survey agency has reason to question the substantial compliance of the facility with a requirement of participation." 42 C.F.R. § 488.332.

31. Ashton Healthcare participates in the Medicare program pursuant to a provider agreement with CMS and applicable federal statutes and regulations. Ashton Healthcare also participates in the Medicaid program pursuant to a provider agreement with the Pennsylvania Medicaid Agency and applicable state and federal statutes and regulations.

32. In October, 2010, CMS placed the Facility on the "Special Focus Facility" list, which requires that certain at-risk facilities be evaluated by CMS every six months.

33. Following evaluations by CMS, CMS alleged that Ashton Healthcare was out of compliance with certain Medicare requirements.

34. Ashton Healthcare denies CMS's allegations.

35. Due to these alleged deficiencies, CMS issued a notice to Ashton Healthcare on May 2, 2013 that CMS intended to terminate Ashton Healthcare's Medicare provider agreement on May 31, 2013.

36. Ashton Healthcare has administratively appealed the decision to terminate its provider agreement, and on May 29, 2013, Ashton Healthcare sought a temporary restraining order to stay the termination of its provider agreement in the United States District Court for the Middle District of Pennsylvania.

37. On May 31, 2013, this Court denied Ashton Healthcare's request for a temporary restraining order, and as of this date, Ashton Healthcare's administrative appeal is still pending. A true and correct copy of this Court's Order denying Ashton Healthcare's Motion for a Temporary Restraining Order is attached hereto as **Exhibit F**.

38. Accordingly, Ashton Healthcare's Medicare and Medicaid provider agreement with CMS is currently terminated, and therefore Ashton Healthcare may no longer receive reimbursements from Medicare and Medicaid. As a result, on information and belief, Ashton Healthcare has begun relocating some of the residents of the Facility to other skilled nursing facilities.

39. The relocation of residents to other facilities may cause harm to those residents that must be relocated, and will also cause great harm to the Borrowers' ability to continue as a going concern, thereby jeopardizing Sovereign Bank's collateral.

**IV.  The Defendants' Default under the Loan Documents.**

40. Ashton Healthcare's Medicare and Medicaid provider agreement was terminated on May 31, 2013.

41. The termination of Ashton Healthcare's provider agreement with CMS constitutes an Event of Default under the Master Loan Agreement. Master Loan Agreement, §§ 6.01(e)(iii), 7.01(c).

42. As a result of the Borrowers' default under the Master Loan Agreement, Sovereign Bank is entitled to, *inter alia*, accelerate the loan, confess judgment, and have a receiver appointed to manage the Facility. Master Loan Agreement, § 7.02(a); Mortgage, ¶¶ 17(f), 18(g) and 19.

## Count I
### Against all Borrowers
### (Breach of Contract – Master Loan Agreement)

43. Plaintiff repeats, realleges and reiterates each of the foregoing paragraphs as though fully set forth herein.

44. The Loan Documents, including the Master Loan Agreement, constitute valid, binding and enforceable contracts between the Borrowers and Sovereign Bank.

45. Sovereign Bank has performed all of its obligations under the Loan Documents, including the Master Loan Agreement.

46. Pursuant to the terms of the Master Loan Agreement, the Borrowers were required to "maintain in effect at all times eligibility of the Ashton Facility to participate in the Medicaid program (including maintenance of an appropriate Provider Agreement), eligibility to participate in the Medicare program (including maintenance of appropriate Provider Agreement [*sic*]), professional licenses and accreditations from all appropriate agencies and boards for the Ashton Facility's administrative, medical and nursing staffs, and all other required licenses, certifications, accreditations, approvals and authorizations from PADOH or any other

supervisory or regulatory body having or claiming jurisdiction." Master Loan Agreement, § 6.01(e)(iii).

47. The Borrowers breached their agreement in the Master Loan Agreement, and are in default under the Master Loan Agreement by, *inter alia*, their failure to maintain the required eligibility of the Facility to participate in the Medicaid and Medicare programs.

48. Pursuant to the Loan Documents, Sovereign Bank is entitled to, *inter alia*, accelerate the principal loan amount upon an Event of Default.

49. As a direct and proximate result of the Borrowers' default under the Loan Documents, Sovereign Bank has suffered damages.

50. As of June 11, 2013, the principal amount of the Loans outstanding is $9,223,486.59.

**WHEREFORE**, Plaintiff hereby requests that an order be entered: (a) granting judgment against the Borrowers and in favor of Sovereign Bank in an amount of at least $75,000 to be proven at trial; and (b) granting such other and further relief as the Court deems equitable and just.

**Count II**
**Against Athens Properties, LLC**
**(Breach of Contract – Mortgage)**

51. Plaintiff repeats, realleges and reiterates each of the foregoing paragraphs as though fully set forth herein.

52. The Loan Documents, including the Mortgage, constitute valid, binding and enforceable contracts between the Borrowers, including Athens Properties, LLC and Sovereign Bank.

53.     Sovereign Bank has performed all of its obligations under the Loan Documents, including the Mortgage.

54.     Athens Properties, LLC breached its agreement in the Mortgage, and is in default under the Mortgage by, *inter alia*, its failure to ensure that the Facility maintain its required eligibility to participate in the Medicaid and Medicare programs.

55.     Pursuant to the Loan Documents, Sovereign Bank is entitled to, *inter alia*, accelerate the principal loan amount upon an Event of Default.

56.     As a direct and proximate result of the Borrowers' default under the Loan Documents, Sovereign Bank has suffered damages.

57.     As of June 11, 2013, the principal amount of the Loans outstanding is $9,223,486.59.

**WHEREFORE**, Plaintiff hereby requests that an order be entered: (a) granting judgment against the Borrowers and in favor of Sovereign Bank in an amount of at least $75,000 to be proven at trial; and (b) granting such other and further relief as the Court deems equitable and just.

**Count III**
**Against all Borrowers**
**(Appointment of a Receiver)**

58.     Plaintiff repeats, realleges and reiterates each of the foregoing paragraphs as though fully set forth herein.

59.     The Mortgage provides that Sovereign Bank, upon an Event of Default, shall be entitled to the appointment of a receiver.

60.     The Master Loan Agreement provides that upon the occurrence of an Event of Default, Sovereign Bank may exercise any of its rights under any of the other Loan Documents, including the Mortgage.

61.     The Borrowers' default under the Loan Documents entitles Sovereign Bank to appoint a receiver to manage the Facility.

62.     The appointment of a receiver is necessary to protect and preserve the value of Sovereign Bank's security, and the appointment of a receiver is further necessary to protect the residents of the Facility.

**WHEREFORE**, Plaintiff hereby requests that an order be entered: (a) appointing a healthcare receiver to manage the Facility; and (b) granting such other and further relief as the Court deems equitable and just.

DUANE MORRIS LLP

By:  */s/ Catherine E. Beideman*
Catherine E. Beideman, Esquire
30 South 17th Street
Philadelphia, PA 19103
215.979.1000

John Robert Weiss, Esquire
190 South LaSalle Street
Suite 3700
Chicago, IL 60603
312.499.6700

Dated:  June 14, 2013